## COURT OF CHANCERY, DEC. TERM 1799.

J. and D. Cheston *vs.* Page's Executors and Devisees.

The bill in this case, (filed on the 27th of September 1793,) states, that *John Page,* deceased, on the 1st of October 1774, was indebted to *William Randolph, William Stevenson,* and the complainant *James Cheston,* as joint merchants and partners in trade, in the sum of 1379*l.* 8*s.* 4*d.* sterling money of G. B. of the value of 2299*l.* 8*s.* 4*d.* current money of Maryland, for divers goods. &c. by them sold and delivered before that time to the said *Page,* at his special instance and request, and which sum of sterling money the said *Page* assumed

to pay to them. That for the recovery of the said debt, and interest thereon, the said W. R. and J. C. after the death of the said W. S. did commence an action in the general court for the eastern shore, by the consent of the other complainant *D. Cheston*, for the use of the said W. R. J. C. & D. C. against the said *Page*, and such proceedings were therein had, that at April term 1790, a *special verdict* was taken between the parties in the said cause, by and with their consent, and which facts, so found by the jury giving the said verdict, contain, and are a full statement of the facts which exist in the case between the complainants and the defendants herein named, up to the death of the said *Page*, as by an attested copy of the said special verdict, produced and lodged in this court, to which the complainants beg leave to refer, and pray that the same may be taken as part of their bill of complaint, to all intents and purposes as if the said facts stated and found in the said special verdict were herein again particularly enumerated and charged in this their bill. That after the finding of the said special verdict, the said cause continued in the said general court, under a rule for argument, up to the death of the said *Page*, being continued, and the decision thereof postponed on account of the indisposition and absence of the defendant's counsel. That the said *Page* afterwards, in the year 1792, departed this life, having first duly made and published his last will and testament, leaving a considerable real and personal estate, more than sufficient to pay all just claims against him, and thereof constituted and appointed his sons J. P. & H. P. two of the defendants herein named, his executors, who have caused the said will to be proved, and taken upon themselves the execution thereof, and possessed themselves of all the personal estate of the said testator, &c. That the said cause continued, under the direction of the court, to advise thereupon, after the death of the said *Page*, until April term 1793, to which term the executors of the said *Page* had been summoned to appear and defend the said suit according to the directions of an act of assembly in such case made and provided; but *the general court, at the said last mentioned term, determined the said cause was not within the provisions of the said act, and ordered the same to be entered abated* by the death of the said *Page*. That the said W. R. hath also departed this life, and the complainant *J. Cheston* is the only surviving partner of the partnership of the said R. S. & C. and the said complainant, as the surviving partner, together with the other complainant *D. Cheston*, the assignee of the said W. S. a bankrupt, have the sole right to settle the concerns of

the said partnership, and have therefore applied to the executors of the said *Page*, since his decease, to pay and satisfy the debt aforesaid, which they wholly refuse to do. And forasmuch as the complainants are without remedy, unless by the aid of this court, the said assignment to the complainant, *D. Cheston*, not being sufficient, as he is advised, to enable him to sustain an action in his own name in a court of law against the said executors, or against the devisees in the said will mentioned. The bill also states the issue left by the said *Page*, who are the defendants in this case, and that he left real and personal estate which have come to the hands of the defendants, or to the hands and possession of some of them, more than sufficient to satisfy the said claim of the complainants, and which they charge is liable for the payment thereof, in the hands of the said defendants, the said claim not having been discharged or paid by the payment made by the said *Page* in his life-time to the said W. S. in the manner and under the circumstances stated in the said special verdict herein before referred to. *Prayer*, that the defendants may answer, &c. and that the complainants may be paid and satisfied out of the personal assets of the said *Page*, or in default thereof out of his real estate, &c, and for further and other relief, &c.

The *special verdict* exhibited, finds that the said *John Page* on the 1st of October 1774, was indebted to the said *William Randolph, James Cheston*, and the said *William Stevenson*, deceased, in the sum of 1379*l.* 13*s.* 4*d.* sterling money of G. B. of the value, &c. for divers goods, &c. by them before that time sold, &c. to he said *Page.* That at the time of the said sale the said R. C. and S, were merchants and copartners, the said R. and S. residing in England, and the said C. residing in Maryland; and that their partnership continued until the 31st of December 1775, at which time it was dissolved. That on the 25th of January 1777, and for divers years then last past, the said *Stevenson* was a merchant and liege subject of the king of G. B. residing in England, and for all that time used and exercised the trade of merchandize by way of bargaining, &c. and that the said S, within that space of time, was truly and justly indebted unto a certain *Daniel Cheston*, (being a liege subject of the said king of G. B.) in the sum of 2448*l.* 11*s.* 4*d.* lawful money of G. B. That by an act of the parliament of the kingdom of England, made at a parliament begun and holden at Westminster, in England, the 2d day of April, in the 13th year of the reign of Elizabeth, formerly queen of England, and the year 1571, entitled, "An act touching orders for bankrupts," it was enacted, that, &c. and that by another act of said parliament

of England, made, &c. the 19th of March, in the 1st year of the reign of James I. formerly king of England, and in the year 1603, entitled, "An act for the better relief of the creditors against such as shall become bankrupts," it was enacted, that, &c. And that by another act of the said parliament of England, made, &c. the 19th of February, in the 21st year of the reign of king James I. and in the year 1624, entitled, "An act for the further description of bankrupts, and relief of creditors against such as shall become bankrupts, and for inflicting corporal punishment upon the bankrupts in some special cases," it was enacted, that, &c.

That the said W. S. being indebted to the said D. C. as aforesaid, on the 25th of January 1777, at the city of Bristol, in England aforesaid, because a bankrupt within the sense and true meaning of the aforesaid statutes. That on the 1st of February 1777, on the petition of the said D. C. on behalf of himself and other creditors of the said W. S. the Lord Chancellor issued a commission, which is set forth, with its return, declaring the said W. S. had become a bankrupt before the issuing the said commission. That the said commissioners on the 8th of March 1777, executed an indenture of assignment to the said D. C. of all goods. &c. of the said W. S. in trust for the benefit of the said D. C. and all and every other creditor of the said W. S. That the said Page afterwards, to wit, on the 20th of May 1779, paid to the said W. S. at Kent county, in this state, the said sum of 2299l. 8s. 4d. current money of Maryland, mentioned in the pleas by the said Page pleaded in this case; but that before the said payment the said Page had received notice, (not by the said R. S. and C. or either of them, but by a citizen of this state not authorised to give such notice,) of the dissolution of the partnership of the said R. S. and C. as aforesaid, and of the bankruptcy of the said S. That the original writ in this cause was sued out in the names of the said R. S. and C. for and on behalf of the said R. and J. C. and of the said D. C. assignee of the commissioners aforesaid, and for the purpose of enabling them the said R. and J. C. and the said D. C. to recover and receive the money mentioned in the declaration in this cause, and not for the benefit, use or behoof, of the said S. That the said Page and J. Cheston were born in the late province of Maryland, and resided and were inhabitants thereof, until the said province ceased to be a part of the dominions of the king of G. B. and became a sovereign independent state; and the said debt was contracted and became due between the 13th of April 1769, and the 1st of October 1774, for goods, &c. sold by the said R. S. and J. C. to the said Page, then resid-

ing in the said province, and in consequence of a contract made between them in the said province. That the late province of Maryland did, on the 4th of July 1776, cease to be a province of the king of G. B. and the said province, and the inhabitants thereof, did cease to be subject to or dependant on the king and government of G. B. or on the dominions of the said king; and that the said 4th of July 1776, a free, sovereign, independent state, called the state of Maryland, took place, and was established within and comprehending the whole territory which before had been called the province of Maryland, and that the inhabitants of all that extent of territory, which had been before called the province of Maryland, did at the same time become citizens and subjects of the said state of Maryland, and then did cease to be subjects of the king of G. B. and that the said state of Maryland, and its said citizens, ever since have remained independent on, and unconnected with the said king of G. B. and his dominions; and also that the said *Page* and *J. Cheston* did, on the said 4th of July 1776, become subjects and citizens of the state of Maryland aforesaid, and ever since have been subjects and citizens of the said state, and have not since that time been citizens or subjects of the king of G. B. That the said *Stevenson* was born in the late province of Maryland, and that he was residing in G. B. on the said 4th of July 1776, and that he did withdraw from the British dominions for his attachment to the United States, and on the 1st of January 1779, did come into the state of Maryland, and became a subject thereof, and from that time did reside in and was a citizen and subject of the said state, until his death, which happened on the 22d of October 1785, in the said state. And that the said *Page*, on the 19th of May 1779, at the county of Kent in the said state, did, at the special instance and request of the said *Stevenson*, pay and satisfy to the said S. as having been one of the partners of the said R. S. and J. C. the sum of 2299*l*. 8*s*. 4*d*. current money of Maryland, in full satisfaction and discharge of all claims and demands which the said R. S. and J. C. had against the said *Page* on account of the said goods, &c. so as aforesaid by them to the said P. sold and delivered, and in full discharge of the said assumption and promise so as aforesaid by him to them made; which said sum the said *Stevenson* then and there did receive from the said *Page* in full satisfaction and discharge thereof. That upon a final adjustment of the partnership accounts of the house of the said R. S. and J. C. made on the 1st of June 1781, between the said R. and J. C. and the said D. C. assignee of the said S. as aforesaid, and signed by the parties, a balance of 2988*l*. 18*s*.

10*d.* lawful money of G. B. of the value of 4981*l.* 11*s.* 5*d.* current money of Maryland, was due to the estate of the said S. it being his proportion of the effects of the said partnership of R. S. and J. C. then remaining and consisting of outstanding debts. That the said *Page*, together with a certain *James Stevenson*, are joint administrators of all the goods, &c. of the aforesaid *W. Stevenson*, and thereof have the administration in due form of law to them granted. But whether upon the whole matter above stated, the payment made by the said *Page* to the said *Stevenson* be good in law to preclude the plaintiffs from recovering in this suit, the jurors are wholly ignorant, and pray the advice of the court thereupon. And if the court, &c.

The defendants by their *answers*, admitted the matters stated in the bill and special verdict, "but they do not admit, know or believe, that their said father had any time before, or at the time he paid the said debt to the said *Stevenson*, any information or knowledge that a statute or commission of bankruptcy had been sued out or prosecuted against the said *Stevenson*, or that any person or persons had been appointed trustee under the bankrupt laws of Great-Britain."

HANSON, Chancellor, on the 14th of May 1798, passed the following order, viz.

"The said cause being set down for hearing, and being submitted, the bill, answers, and all other proceedings, were by the chancellor read and considered. It appears that a suit was brought by the complainants against the deceased *John Page*, in the general court for the eastern shore, and that a special verdict was therein found during the life-time of the deceased; and that afterwards the said suit was struck off or abated before the judgment of the said court was obtained. Whether or not the complainants are entitled to the relief prayed by their bill, depends merely on the law arising from the facts stated in that special verdict.

The chancellor therefore requests the honourable the judges of the general court to take the said verdict, a copy of which is hereto annexed, into consideration, and to report to him their opinion, whether or not the payment therein stated to have been made by the said *John Page* to *William Stevenson*, on the 19th day of May 1779, of the sum of 2299*l.* 8*s.* 4*d.* current money of Maryland, in full satisfaction and discharge of all claims and demands which the said *Randolph, Stevenson* and *J. Cheston*, had against the said *John Page*, on account of the goods, &c. stated to have been to him delivered, &c. was good in law to preclude the plaintiffs in the said suit in the general court from recovering in the said suit."

Dec. 1799.

Cheston
vs.
Page.

The case was argued before the General Court, by *Cooke* and *Key*, for the plaintiffs, and *Martin*, (Attorney-General,) for the defendants.

*Key*, for the complainants. In examining the point which arises out of the special verdict, and which is submitted to the court, I shall make but a few observations in addition to Mr. *Cooke's*, as to the effect of the notice in defeating the payment made by *Page* to *Stevenson*.

The special verdict, amongst other facts, finds this, that *Page*, before payment, had notice of the bankruptcy, but not from any person authorised to give it.

On principle it appears plain, that a debtor after notice of an act of bankruptcy, is guilty of a fraud if he pays a debt to the bankrupt, because he diminishes the fund which on principle of law, justice, and commercial policy, should be exclusively applied to the payment of the bankrupt's debts. If it be a fraud, then it is proper to examine what *notice is required* to prevent the debtor paying a bankrupt.

The *commission of itself* is notice in England, and overreaches all subsequent transactions with the bankrupt in *that* country. But where no commission has issued, if a *secret act* of bankruptcy is committed, and the *debtor has notice of it before* commission issues, the notice overreaches the subsequent payment, and it is deemed fraudulent; and upon the same principle and reason, I contend, that notice actually given of the bankruptcy to a debtor in this country, and that too after commission had, should defeat and make void a payment after such notice. The notice which constitutes the fraud upon the fund and creditors generally, being as operative in one case as the other. But the special verdict has found that notice was not given by either of the parties, but by a person not authorised to give such notice. I take it, that notice is a fact, and it is wholly immaterial by whom given, the law designating no person to give it. It is a fact, like all others, to be inferred or established by diversity of proof, but in our case it is admitted by the verdict to have been given. If the *notice* constitutes the fraud, it is the only essential thing—Through what medium does reason or law say it must come to the debtor? Not from the *assignees* surely, because *before any commission issues*, or *assignees* are appointed, if a debtor having *notice* of a secret act of bankruptcy pays, the payment is void and overreached by a subsequent commission. It is not necessary the *bankrupt* should give notice, because this would defeat the whole system, and put it in his power, by fraudulent combination with his debtor, to cheat his creditors; the bankrupt *at least, par-*

*ticips criminis* wherever a payment is made to him, after a secret act committed, or a commission issued. In truth no form of notice is prescribed, nor no person's duty to give it, but being privy to or informed of it, the party who pays with such privity and information, pays at his peril—2 *T. R.* 113. 2 *Burr.* 932. 4 *Burr.* 2477. 1 *Burr.* 396, 474, 482.

I further contend, that the payment was wholly void, because made to a person incompetent to receive it. *Stevenson* was a British merchant, resident in England, and a *British subject at the time the commission of bankruptcy* issued; and so being, it wholly and conclusively operated on him and his property. It deprived *him* of all right and power to *receive* or *collect* debts be they situated where they would. The law had complete operation on *him*, he was wholly subject to it; and if *notice* was had by a debtor of *his* situation, operated on by such a law, he must pay at the peril of its being void. It occurs to me that the bankrupt law has a two-fold operation—One on the person and privileges of the bankrupt, and another on his debts and the debtors. It is true the municipal law of any particular country may direct on what terms the *debts may be collected by the assignees;* that is as in our own case, out of what is collected they must first wholly pay the debts due in the country. But imposing this, by no means gives *the debtors* a right to pay the bankrupt, nor can it restore or revest him with the power of collecting debts. If this be so, it follows that a payment to a *known* bankrupt must be void. And if I am rightfully informed the practice of this country is illustrative and in conformity to this idea. Before the year 1775, if an English merchant became bankrupt, and commission issued, and the assignees gave bond to pay country debts as far as their collections extended, I am informed the practice was to sue in *their own names.* If they did not give security as aforesaid, then suit was brought in the *bankrupt's name* for *their use;* and this was equivalent to notice, which would affect any debtor who should attempt to pay.

No fraud more glaring could be practised, than is found by this special verdict. It finds that *Page* had notice of *Stevenson's* bankruptcy, and knew him to be a British subject; that he knew *J. Cheston* to be a partner and resident of Maryland; but to consult *J. Cheston* was not his object. *Page* wished to avail himself of a payment in depreciated paper, at least to make the experiment, and the needy rapacity of an insolvent partner made *Stevenson* a proper instrument to work on. *The fact admitted by the attorney general as part of the verdict, shews no surplus could in any event come to Stevenson,* against which

the payment of *Page* might be applied, so as to validate the payment in that way.

It appears *Page* had notice; that no particular form of giving it is required by law; that no person is designated by law to give it; and that justice, reason, and the safety of mercantile transactions, which are bottomed on credit, require all transactions to be *bona fide;* and if so, a payment with notice must be *male fide,* and of course void. Our courts have determined that the bankrupt laws of other states are to be taken notice of in our courts—*Harrison vs. Young,* General Court, May 1788. Is it not a solecism and absurdity to say, that the bankrupt shall have the benefit of the law, but not its disadvantages; that is, we will protect his person, discharge him from arrest on common bail, and yet establish a payment to him made with a knowledge of the situation in which he stands, *and* allow him to receive his debts, although he is to pay none?

THE GENERAL COURT, *(a)* at October term, 1799, certified to the chancellor, as follows, viz.

"We do hereby certify to the honourable the chancellor of Maryland, that we have considered the special verdict in this case, and the facts therein contained, and are of opinion that the payment therein stated to have been made by *John Page* to *William Stevenson,* on the 19th day of May 1779, of 2299*l.* 8*s.* 4*d.* current money of Maryland, was a good and valid payment in law to preclude the plaintiffs in the said suit in the general court from recovering therein."

"JEREMIAH TOWNLEY CHASE,
"G. DUVALL."

HANSON, Chancellor, at December term 1799, decreed as follows: "This cause having long since been submitted, and the chancellor having requested the opinion of the general court on the special verdict, in the bill mentioned, on which depended the question, whether or not the complainants had any just claim against the defendants; and the opinion of two judges of the said court in favour of the defendants, on the said verdict, having been filed in this court; and the papers being this day laid before the chancellor for a final decree; and no other claim against the defendants, as heirs aforesaid, being exhibited—*It is thereupon,* this 17th day of February 1800, by *A. C. Hanson* chancellor, and by the authority of this court, adjudged, ordered and decreed, that the bill of the complainants, *J. and D. Cheston,* be dismissed;

*(a) Done,* J. owing to indisposition did not attend.

and that the defendants be also hence dismissed; but as it is evident from the proceedings that both parties conceived there was probable grounds for instituting the suit, and as the chancellor is of that opinion, they are dismissed without costs."